**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEBRA RUDERMAN, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-cv-6153 |
| | ) | Judge Robert M. Dow, Jr. |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Bank of America's motion [13] to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendant's motion is denied.

**I.    Background**[1]

Debra Ruderman (Plaintiff) and her two siblings owned a real estate business ("the Freed business") that was founded by their father, the late Joseph Freed. DDL, LLC ("DDL") is the principal entity through which the business holds its ownership interests in real estate. As of January 1, 2006, fifty percent of DDL was owned by Plaintiff's brother, Laurance, the sole manager of the Freed business; Plaintiff and her other brother, Daniel, each owned twenty-five percent of DDL. Plaintiff's interest in DDL was owned through the Debra Freed Ruderman Declaration of Trust ("the Trust") and through trusts for the benefit of Plaintiff's children.

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well pleaded allegations set forth in the complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

La Salle Bank, which was acquired by Bank of America in 2007, began providing financial advisory and investment management services to Plaintiff and to the Trust in 2006 (in the interest of simplicity, this opinion refers to both La Salle Bank and Bank of America as "Defendant"). Plaintiff alleges that Defendant held out its Wealth Management Group as having special skills, sophisticated knowledge, and expertise in financial planning and investment management. Plaintiff also alleges that her knowledge and skills in these matters were inferior to Defendant's and that she trusted and relied on Defendant to advise her on the matters. Plaintiff states that Defendant was already a major lender to the Freed business when Defendant began serving as an investment advisor to Plaintiff.

During the spring of 2006, Defendant told Plaintiff that her wealth was overly concentrated in the Freed business, that her investments lacked liquidity and predictable cash flow, and that they were at risk due to the volatility of the commercial real estate market. Defendant advised Plaintiff to sell a portion of her ownership in DDL and entrust the proceeds to Defendant, which would invest the proceeds in safer and more diverse investments. In June of 2006, Plaintiff, as trustee of the Trust, established investment accounts ("the Trust Investment Accounts") that were managed by Defendant. Plaintiff alleges (and Defendant acknowledges) that Defendant had discretionary authority over the investment of the assets held in the Trust Investment Accounts. In December 2006, DDL made a distribution to the trust of approximately $4.3 million. Plaintiff alleges that, at Defendant's recommendation, Plaintiff directed those funds to be deposited in the Trust Investment Accounts.

DDL and its affiliate, Freed Investment Management, LLC, ("FIM") entered into a loan agreement with Defendant ("the Bank Loans") to provide capital for the Freed business. In late 2007, DDL and FIM negotiated with Defendant for an extension of the Bank Loans. Plaintiff

2

alleges that Defendant agreed to the extension only on the condition that DDL and FIM provided additional collateral.

According to Plaintiff, Defendant prepared a Pledge Agreement to itself of the Trust Investment Accounts ("the Pledge Agreement") as collateral for the extension of the Bank Loans. The Pledge Agreement was dated September 30, 2007, and bears the purported signature of Plaintiff. However, Plaintiff alleges that she was not aware of the Pledge Agreement, did not sign it, and did not authorize anyone to sign it on her behalf. Plaintiff alleges that Defendant was familiar with her signature, and therefore knew or should have known that the signature on the Pledge Agreement was a forgery. Plaintiff also claims that Defendant knew that the Pledge Agreement undermined the financial and investment plan that Defendant had developed for Plaintiff and the trust. Plaintiff alleges that Defendant never informed Plaintiff of its conflict of interest with respect to the Pledge Agreement, on the one hand, and its investment planning for Plaintiff and the Trust, on the other.

During the summer of 2008, the Freed business experienced financial difficulties and fell into arrears in its loan payments to Defendant. Defendant agreed to extend the loan payment dates. Accordingly, Defendant prepared two Forbearance Agreements concerning the two Bank Loans in or around July 2008. The Forbearance Agreements provided that Defendant would forbear on collection of the Bank Loans from June 19, 2008, to August 27, 2008. The Forbearance Agreements included a recital of the September 30, 2008, Pledge Agreement, and stated that they incorporated the Pledge Agreement as a term of the forbearance. Plaintiff alleges that, upon Defendant's request, she signed the Forbearance Agreements in July 2008.

Plaintiff alleges that when she signed the Forbearance Agreements, she was unaware of the existence of the Pledge Agreement and did not know that the Forbearance Agreements

3

incorporated the Pledge Agreement as a term of the forbearance. Plaintiff also alleges that she did not understand the implications of that incorporation. Plaintiff states that she had "no reason to believe that the Bank sought or would seek her signature on documents reaffirming an earlier forged document that fundamentally undermined the financial plan that the Bank had recommended and that she had implemented." [1, at 11.] Plaintiff alleges that she first learned of the existence of the Pledge Agreement in August 2008, when an employee of Defendant informed her that she would be unable to use funds in the Trust Investment Accounts to pay for her children's college tuition because those funds had been pledged to Defendant. Plaintiff alleges that when she asked the employee why Defendant had not made her aware of the Pledge Agreement, the employee told Plaintiff that his supervisor at the Bank had instructed him not to do so. Plaintiff thus charges that Defendant not only failed to inform her of the Pledge Agreement that purported to bear her signature, but deliberately concealed the Pledge Agreement from her.

The Freed businesses presumably defaulted on the Bank Loans after expiration of the forbearance period. Plaintiff alleges that she received a Notice of Disposition of Collateral in June 2009 that stated that Defendant would sell or redeem the Trust Investment Accounts on or after May 20, 2009. Plaintiff alleges that she received a Second Notice of Disposition of Collateral in December 2009 stating that the Trust Investment Accounts could be liquidated on or after December 14, 2009.

Plaintiff alleges that she informed Defendant by letter on December 11, 2009, that the Pledge Agreement was not signed or authorized by Plaintiff. In the same letter, Plaintiff demanded that the Trust Investment Accounts be released from the Pledge Agreement and returned to the Trust. Defendant at some point thereafter sent a Third Notice of Disposition of

4

Collateral to Plaintiff. On May 27, 2010, Defendant liquidated the Trust Investment Accounts and transferred the proceeds of that liquidation (approximately $4.3 million) to itself.

Plaintiff filed a complaint against Defendant in this Court on September 24, 2010, asserting six claims: conversion (Count I), breach of fiduciary duty (Count II), unjust enrichment (Count III), fraudulent concealment (Count IV), professional negligence (Count V), and violation of the Illinois Consumer Fraud Act (Count VI).

## II.  Legal Standard on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 569 n.14). In other words, the pleading must allege facts that plausibly suggest the claim asserted. *Twombly*, 550 U.S. at 570. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (omission in original).

The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III. Analysis

Defendant argues that Plaintiff's complaint must be dismissed for three reasons. First, Defendant contends that Plaintiff failed to adequately plead that Defendant had a fiduciary duty to Plaintiff and that, because all six of Plaintiff's claims presume a fiduciary duty, the complaint must be dismissed in its entirety. Second, Defendant contends that, even assuming there was a fiduciary relationship, that relationship did not obviate Plaintiff's duty to read the Forbearance Agreements, which terms included ratification of the Pledge Agreement. Accordingly, Defendant argues that the three claims that assert a breach of Defendant's duty to disclose (Counts IV, V, and VI) must be dismissed. Finally, Defendant contends that Plaintiff's complaint violates the Illinois Credit Agreements Act and should therefore be dismissed. The Court addresses each argument in turn.

### A. Whether Plaintiff Sufficiently Alleged that Defendant Had a Fiduciary Duty to Plaintiff and Breached that Duty

Plaintiff contends that the nature of Defendant's role as Plaintiff's investment advisor imposed a fiduciary duty on Defendant. Plaintiff contends that Defendant breached that duty by asking Plaintiff to sign the Forbearance Agreements without affirmatively bringing to her attention the forged Pledge Agreement that it incorporated as a term of the forbearance, and by subsequently appropriating the pledged assets in payment of the Bank Loans. At their core, all six counts in Plaintiff's complaint rest on the alleged fiduciary nature of Defendant's relationship to Plaintiff.

Defendant argues that Plaintiff cannot maintain any of the six claims in its complaint because Plaintiff did not adequately allege that Defendant played a fiduciary role in its transactions with Plaintiff. Moreover, Defendant alleges that even if Defendant had a fiduciary duty, it satisfied that duty by ensuring that its transactions with Plaintiff were fair and equitable.

Defendant first argues that Plaintiff cannot assert a fiduciary relationship because Plaintiff did not sufficiently plead that Defendant served as Plaintiff's investment advisor. Defendant concedes that it advised Plaintiff to diversify her assets and sell part of her interest in the Freed business, that Plaintiff acted upon that advice, and that Plaintiff gave Defendant discretionary authority to invest the proceeds of the sale of her interest in the Freed business. However, Defendant points out that the complaint fails to allege how and when Defendant became Plaintiff's advisor, the scope and duration of Defendant's advisory role, and "other terms of such engagement, including consideration." [14, at 6.] Defendant argues that these omissions are fatal to the complaint under *Twombly*. See *Twombly*, 550 U.S. at 563.

Defendant relies on *Bissessur v. Indiana Univ. Board of Trustees*, 581 F.3d 599, 603-604 (7th Cir. 2009), in support of its argument. In *Bissessur*, the plaintiff's complaint asserted a claim for breach of implied contract that included the following allegations:

> 36. An implied contract existed between [plaintiff] Bissessur and [defendant] IU.
> 37. IU breached the implied contract that existed between Bissessur and IU.
> 38. IU's actions were arbitrary, capricious, and undertaken in bad faith.

581 F.3d at 602. The district court dismissed the plaintiff's complaint for failure to state a claim. *Id.* The Seventh Circuit affirmed, finding that the complaint fell "drastically short of providing the necessary factual details to meet the *Twombly* standard." *Id.* at 603. For example, the complaint did not mention any promises that the defendant had made to the plaintiff or what entitlement the plaintiff had as a result of the purported contract. *Id.*

7

*Bissessur* is readily distinguishable from this case. Here, Plaintiff alleges that Defendant served as Plaintiff's advisor from 2006 through August 2008. Plaintiff also alleges that Defendant held out its Wealth Management Group as having special skills, knowledge, and expertise in financial planning and investment management. Plaintiff identifies the principal bankers who provided these management services to Plaintiff, and avers that the bankers communicated regularly with Plaintiff regarding the Trust Investment Accounts, her financial plan, and other financial matters. Plaintiff alleges that Defendant's purported skills, knowledge, and expertise in these matters were superior to Plaintiff's own. Plaintiff alleges that she trusted and relied on Defendant to provide her with sound and independent advice on these matters.

Unlike the plaintiff in *Bissessur*, Plaintiff has provided far more than a "threadbare recitation" of the elements of a claim. *Bissessur*, 581 F.3d at 603. Indeed, she has provided factual support for the claims that she asserts are sufficient to give Defendant "fair notice of what the * * * claim[s] [are] and the grounds upon which [they] rest[]. See *Twombly*, 550 U.S. at 545 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Plaintiff has thus satisfied the *Twombly* standard, at least as far as pleading that Defendant served as an investment advisor to Plaintiff.

Defendant argues in the alternative that, even assuming that Plaintiff has adequately alleged Defendant's advisory role, Plaintiff has not sufficiently pleaded the fiduciary nature of that role. Defendant claims that Plaintiff did not affirmatively plead that she was inexperienced and unsophisticated or that she took Defendant's advice uncritically and unquestionably. Defendant further claims that the complaint "does not even include the usual formulaic recitation that the Bank gained influence and superiority over plaintiff * * *." [14, at 8.]

A fiduciary duty requires an agent to treat its principal with the utmost candor, rectitude, care, loyalty, and good faith. See *Burdett v. Miller*, 957 F.2d 1375 (7th Cir. 1992) (*en banc*).

"The common law imposes that duty when the disparity between the parties in knowledge or power relevant to the performance of an undertaking is so vast that it is a reasonable inference that had the parties in advance negotiated expressly over the issue they would have agreed that the agent owed the principal the high duty that we have described, because otherwise the principal would be placing himself at the agent's mercy." *Id.* Where the principal is not in a position to supervise or control the actions of the agent and entrusts the agent to take those actions on his behalf, "the fiduciary principle is designed to prevent that trust from being misplaced." *Id.*

A fiduciary duty arises as a matter of law in certain types of relationships – for example, a lawyer-client relationship and a guardian-ward relationship. *Burdett*, 957 F.2d at 1381. It does not arise as a matter of law in an investment advisor-advisee relationship. *Id.* However, a fiduciary duty *may* arise in the investment advisory relationship if (1) the advisor solicits the advisee to trust him (2) in matters in which the advisor represents himself to be expert and trustworthy, and (3) the advisee is not expert and (4) accepts the offer and reposes complete trust in the advisor. *Id.* In other words, there must be some "ascendancy" in the relationship in that the advisor "gains influence and superiority" over the advisee. *Id.* (internal citations omitted).

Plaintiff contends that Defendant's fiduciary duty arose out of its role as Plaintiff's investment advisor. Plaintiff alleges numerous facts to support this contention. For example, she alleges that Defendant asked Plaintiff to entrust Defendant to invest the funds in the Trust Investment Accounts in view of Defendant's investment expertise. Plaintiff alleges that she lacked knowledge and expertise in investment matters and placed her trust in Defendant to invest her funds. Plaintiff further states that she gave Defendant authority to exercise its discretion in investing the funds. See *Commodity Futures Trading Comm'n v. Heritage Capital Advisory*

*Servs., Ltd.*, 823 F.2d 171, 173 (N.D. Ill. 1987) (holding that "a broker operating a discretionary account – in which the broker determines which investments to make is – is viewed as a fiduciary"); *Refco, Inc. v. Troika Investment Limited*, 702 F. Supp. 684, 686-87 (holding that, unlike a broker handling a nondiscretionary account, a broker that controls its customer's account owes a fiduciary duty to that client).[2]

Although Defendant correctly points out that Plaintiff does not specify that she was "inexperienced and unsophisticated," that Defendant knew that she accepted Defendant's advice "uncritically and unquestionably," or that Defendant "gained influence and superiority" over her, its conclusion that Plaintiff has not sufficiently pleaded "ascendancy" in the relationship is unpersuasive. [14, at 7-8.] No quantum of ignorance is necessary to show a fiduciary relationship, nor does recitation of the terms "influence" and "superiority" have a talismanic quality with respect to claims based on that relationship. See *Carl v. Galuska*, 785 F. Supp. 1283, 1288 (N.D. Ill. 1992) (denying motion to dismiss breach of fiduciary duty claim where plaintiff alleged that defendant acted as plaintiff's financial advisor and recommended various investments to him, and asserted other facts that "suggest[ed]" that defendant possessed superior

---

[2] Defendant cites *Soranno v. New York Life Ins.*, 2000 WL 748145, at *8 (N.D. Ill. May 31, 2000), for the proposition that that the mere fact that a broker has discretionary authority over a plaintiff investor's funds does not by itself establish a fiduciary duty. Defendant's reliance on *Soranno* is misplaced. First, as described above, Plaintiff does not rest her claim of fiduciary duty solely on the allegation that Defendant was her investment advisor; she alleges other facts in support of the claim. Second, *Soranno* is distinguishable from the instant case on the facts. In *Soranno*, the plaintiff investors alleged that the defendant insurance company had discretionary control over the plaintiffs' investments. 2000 WL 748145, at *8. The plaintiffs alleged that they reposed trust in David Freitag, an agent of defendant, and that Freitag accepted the plaintiffs' trust. *Id.* The court held that the allegations concerning Freitag were insufficient to support a claim of breach of fiduciary duty as to *the defendant*. *Id.* Here, Plaintiff does not allege that a fiduciary relationship with Defendant arose by proxy of an agent. Rather, she alleges facts sufficient to show that she reposed trust in Defendant, that Defendant accepted that trust, and that Defendant exerted dominion and control in part by way of its discretionary authority over Plaintiff's accounts.

knowledge and influence over him). Under *Twombly*, Plaintiff has made allegations sufficient to show a fiduciary relationship. Thus, to the extent that Defendant's motion to dismiss is based on a failure to adequately plead that Defendant owed Plaintiff a fiduciary duty, the Court denies Defendant's motion.

> **B.     Whether Plaintiff Sufficiently Alleged that Defendant's Role as a Fiduciary Obviated Plaintiff's Duty to Read the Forbearance Agreements**

Plaintiff alleges that Defendant failed to inform Plaintiff that the Forbearance Agreements ratified the Pledge Agreement, and intentionally omitted material facts before requesting Plaintiff's signature on the Forbearance Agreements. In so doing, Plaintiff contends, Defendant breached its fiduciary duty to disclose material facts of the Forbearance Agreements. Plaintiff's claims of fraudulent concealment (Count IV), professional negligence (Count V), and violation of the Illinois Consumer Fraud Act (Count VI) rest on this alleged breach of the duty to disclose. Defendant argues that Plaintiff was harmed not by Defendant's failure to disclose material facts in the Forbearance Agreement, but rather by Plaintiff's own failure to read the documents before signing them. Defendant contends that because Plaintiff does not adequately allege Defendant's harm, Counts IV, V, and VI must be dismissed.

In general, a plaintiff has a duty to learn the contents of a contract before she signs the contract. *Regensberger v. China Adoption Consultants*, 138 F.3d 1201, 1207 (7th Cir. 1998). And in general, a plaintiff who fails to do so cannot invoke the protection of the law against the harm that resulted. *Id.*

However, as Plaintiff points out, Illinois courts have, in special circumstances, excused a party's failure to read a document before signing when the party's fiduciary requested that she sign the document. See *Prueter v. Bork*, 435 N.E.2d 109, 112-13 (Ill. App. Ct. 1st Dist. 1981); *Tuchowski v. Rochford*, 857 N.E.2d 829, 832 (Ill. App. Ct. 1st Dist. 2006). For example, in

11

*Prueter*, the court – on appeal from a judgment entered for defendants after a bench trial – excused a trust beneficiary's failure to read a document revoking a trust when the revocation was urged by the trustee in order to benefit of the trustee. The court held that "[t]he duty of loyalty owed by a trustee to a beneficiary in a trust relationship is more intense than any other fiduciary relationship. Such duty prohibits the trustee from seeking any benefit for himself during the course of that relationship." *Prueter*, 435 N.E.2d at 112-13 (citations omitted). The court thus held that the documents were presumptively invalid unless the defendants could prove that "plaintiff had full knowledge of the trust terms when he executed these documents." *Id.* at 113.

Similarly, in *Tuchowski*, the court excused the plaintiff's failure to read the closing documents in the sale of real property. 857 N.E.2d at 833. The plaintiff had retained the defendant, an attorney, to represent her in the sale of two of three adjacent lots that the plaintiff owned. *Id.* at 831. The attorney prepared a sale contract for the two lots. *Id.* At the request of the prospective buyers' attorney, the defendant later amended the contract, unbeknownst to the plaintiff, to include the third lot. *Id.* The deed referenced all three lot numbers (albeit in small print). *Id.* However, the plaintiff failed to notice that the deed included the third lot, and signed the deed at the closing despite her unwillingness to sell that property. *Id.* The trial judge granted the defendant's motion to dismiss on the ground that the plaintiff should have known at the time of the closing that she was selling the third lot because it was referenced in the deed. *Id.* at 830. The appellate court reversed, holding that the plaintiff "adequately alleged facts from which a trier of fact could infer that Tuchowski reasonably relied on her attorney when she signed the documents without reading them." *Id.*

Defendant attempts to distinguish *Prueter* and *Tuchowski* by arguing that the fiduciary quality of the investment advisor-advisee relationship is more dilute than that of either the

trustee-beneficiary relationship or the attorney-client relationship, and therefore, unlike the latter two, it does not excuse a person's failure to read a document that the fiduciary asks her to sign. Although the latter two types of relationships may indeed be considered more "intense" fiduciary relationships insofar as a fiduciary duty inheres in them as a matter of law, for the reasons stated above Plaintiff has adequately pleaded that Defendant in this case had a fiduciary duty as Plaintiff's investment advisor. Moreover, accepting all of Plaintiff's allegations as true for purposes of this motion to dismiss, the allegation that the Forbearance Agreements purported to incorporate and ratify a document that Defendant knew or should have known was forged is enough to plausibly claim that Defendant had a duty to disclose the material facts of the documents before asking Plaintiff to sign them.[3] Plaintiff has sufficiently alleged that Defendant

---

[3] For the same reason, the Court concludes that a Seventh Circuit case upon which Defendant relies, *Carr v. CIGNA Securities, Inc.*, 95 F.3d 544 (7th Cir. 1996), is distinguishable. In *Carr*, the plaintiff paid the defendant financial advisory firm $450,000 for limited-partner interests in commercial real estate partnerships that the defendant had created. *Id.* at 545. The plaintiff purchased the interests after a salesman told him that the investment was safe and conservative. *Id.* It was not, and the plaintiff lost all of his money. *Id.* The plaintiff had signed documents that disclosed that the investment was risky, but stated that he only "breezed through them" before signing and did not understand them. *Id.* The Seventh Circuit first noted that, under Illinois law, the defendant did not bear a fiduciary duty to the plaintiff because the defendant did not have discretionary authority over the plaintiff's investment. *Id.* at 547. The court went on to state that even if it considered the defendant to be a fiduciary, "provided that the fiduciary's principal is a competent adult, the fiduciary relationship does not excuse the principal from taking the most elementary precautions against a salesman's pitch, such as the precaution of reading a short and plain statement of what one is buying for one's $450,000." *Id.* at 547-48. The court therefore affirmed the lower court's dismissal of the case. *Id.* at 548. The court cautioned, however, that a fiduciary relationship may in some cases excuse a principal from failing to read a document if the document is unclear or if "the relationship may involve such a degree of trust invited by and reasonably reposed in the fiduciary as to dispel any duty of self-protection by the principal." *Id.* at 548. Here, unlike *Carr*, Plaintiff does not allege that she was led down the primrose path by an overeager salesperson. Rather, she claims that Defendant's Wealth Management Group employees – from whom she had received and followed investment advice for two years – deliberately concealed a forgery and then asked her to sign a document that purported to legitimate the forgery. At least at this stage of the litigation, the Court concludes that these allegations suffice to situate this case within the bounds of the duty-to-read caveat carved out by *Carr*.

13

breached its duty to disclose. The Court therefore denies Defendant's motion to dismiss as to Counts IV, V, and VI.

### C. Applicability of the Credit Agreements Act

Finally, Defendant argues that Plaintiff's complaint should be dismissed because it is barred by the Illinois Credit Agreements Act ("ICAA"). Plaintiff argues that the Forbearance Agreements are not "credit agreements" as intended by ICAA, and thus are not covered by the statute.

The ICAA provides that a debtor cannot maintain an action based on a "credit agreement" unless the agreement is reduced to writing. 815 ILCS 160/2. The ICAA defines a "credit agreement" as "an agreement or commitment by a creditor to lend money or extend credit or delay or forbear repayment of money not primarily for personal, family or household purposes, and not in connection with the issuance of credit cards." 815 ILCS 160/1(1). The ICAA applies where any part of an agreement takes the form of a loan or extension of credit. See *Help at Home, Inc. v. Medical Capital, LLC*, 260 F.3d 748, 754 (7th Cir. 2001).

Plaintiff argues that the ICAA does not apply to this case because Plaintiff's claims arise not from the Agreements themselves, but from Defendant's alleged failure to satisfy its fiduciary duty to Plaintiff prior to her signing the Forbearance Agreements. In other words, Plaintiff alleges that Defendant's duty to Plaintiff was generated not contractually by the terms of a credit agreement, but by the terms of the fiduciary relationship that Defendant entered into with Plaintiff when it gave Plaintiff investment advice and assumed discretionary authority over Plaintiff's investments, long before Plaintiff signed the Forbearance Agreements. The Court finds this argument persuasive and, in view of the reasons set forth above regarding the

sufficiency of Plaintiff's allegations of Defendant's fiduciary obligations, denies Defendant's motion to dismiss Plaintiff's ICAA claim.

**IV.    Conclusion**

For the reasons stated above, the Court respectfully denies Defendant's motion to dismiss Plaintiff's complaint [13].

Dated: June 1, 2011             _____
                                Robert M. Dow, Jr.
                                United States District Judge