UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBRA F. RUDERMAN, Individually and as Trustee of the Debra Freed Ruderman Declaration of Trust dated October 5, 1995, as amended,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | No. 10 C 6153<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Defendant Bank of America moves the Court to compel nonparty deponent Laurance Freed to answer questions at his deposition. For the reasons stated below, the Motion is denied.

### I. BACKGROUND

Plaintiff Debra Ruderman, individually and as Trustee of the Debra Freed Ruderman Declaration of Trust dated October 5, 1995 (Ruderman Trust), alleges that she and her brothers owned a business (the Freed business), which in turn held certain ownership interests in commercial real estate through an entity called DDL, LLC. As of January 1, 2006, Ruderman owned 25% of DDL through various trusts; her brother Daniel owned 25%; and her other brother, Laurance, who acted as the

sole manager of the Freed business, owned 50%. Ruderman and the Freed business obtained financial and investment management services from LaSalle Bank, which was acquired by Defendant Bank of America (collectively, the Bank) in 2007.

In early 2006, the Bank advised Ruderman that her wealth was overly concentrated in the Freed business, that her investments lacked liquidity and predictable cash flow, and that they could be affected by the volatility of the commercial real estate market. The Bank recommended that Ruderman sell a portion of her ownership in DDL and enlist the Bank to manage and invest the proceeds. Later in 2006, Ruderman set up several trust investment accounts with the Bank and granted it discretionary authority over the investment of the assets held in the accounts. In December 2006, Ruderman directed a $4.3 million distribution from DDL into the trust investment accounts.

Meanwhile, the Bank continued its pre-existing lending relationships with DDL and its affiliate, Freed Investment Management, LLC (FIM). In late 2007, DDL and FIM negotiated a loan extension with the Bank. Ruderman alleges that the Bank agreed to the extension on the condition that DDL and FIM provide additional collateral. According to Ruderman, the Bank prepared an agreement pledging Ruderman's trust investment accounts as the requisite collateral. The Pledge Agreement, dated September 30, 2007, was transmitted to Al O'Donnell, CFO of Joseph Freed & Associates, a wholly-owned subsidiary of DDL, on or about December 20, 2007, and it was returned to the Bank shortly thereafter. O'Donnell reported to Laurance Freed. The Pledge Agreement bears the purported signature of Ruderman. Ruder-

man, however, alleges that she was not aware of the Pledge Agreement, did not sign it, and never authorized anyone to sign it on her behalf.

Ruderman did not learn of the Pledge Agreement until August 2008, when she attempted to use funds in the trust investment accounts to pay her children's college tuition and was told that she could not do so because the funds had been pledged to the Bank.

Prior to that revelation, the Freed business encountered some financial difficulties and failed to make its loan payments to the Bank. The Freed business ultimately defaulted on its loans from the Bank. Ruderman received a Notice of Disposition of Collateral in December 2009 advising her that the trust investment accounts could be liquidated on or after December 14, 2009. By letter dated December 11, 2009, Ruderman informed the Bank that she had not authorized or signed the Pledge Agreement. In that same letter, she demanded that the trust investment accounts be released from the Pledge Agreement and returned to her trust. Later, however, the Bank sent Ruderman another Notice of Disposition of Collateral and on May 27, 2010, liquidated the trust investment accounts and transferred the approximately $4.3 million in proceeds to itself.

Ruderman filed the instant lawsuit against the Bank in September 2010. She asserts six claims: conversion, breach of fiduciary duty, unjust enrichment, fraudulent concealment, professional negligence, and violation of the Illinois Consumer Fraud Act.

## II. DISCUSSION

On July 19, 2013, Laurance Freed appeared in this matter for his deposition. He invoked his Fifth Amendment privilege and refused to answer most questions, other than questions regarding his name, address, and the name of his current employer. (Dkt. 104, Ex. A).

The Bank moves to compel Laurence Freed to answer questions at his deposition. The Bank contends that if Ruderman did not sign or approve the Pledge Agreement, then the "likely signer" was Freed, or it was "executed at his direction and with his approval." (Mot. ¶ 4). The Bank also contends that Ruderman "testified that she asked Freed whether he signed the Pledge Agreement, and Freed did not deny that the Pledge Agreement was signed by him or with his approval." (*Id.*). The Bank argues that if Freed signed the Pledge Agreement, he did so as an authorized agent of the Ruderman Trust pursuant to a document entitled "Appointment of Laurance H. Freed as Agent Under the Debra Freed Ruderman Declaration of Trust dated October 9, 1995 as Amended" (the Appointment). (*Id.* ¶¶ 5–6).

The Fifth Amendment privilege against compelled self-incrimination "must be accorded liberal construction." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). The privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Id*. "The right to assert the Fifth Amendment privilege depends upon the possibility, not the likelihood of prosecution." *Hillman v. City of Chicago*, 918 F.

Supp. 2d 775, 778 (N.D. Ill. 2013) (citing *In re Folding Carton Antitrust Litig.*, 609 F.2d 867, 872 (7th Cir. 1979)). A witness is not required to prove the possibility of prosecution, so whenever "there is any basis for a prosecution, the Fifth Amendment protection applies." *In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1152 (7th Cir. 1981), *aff'd sub nom. Pillsbury Co. v. Conboy*, 459 U.S. 248 (1983). "The possibility of prosecution is foreclosed only by the existence of an absolute bar to prosecution as indicated by a statute of limitations, immunity, or double jeopardy." *Hillman*, 918 F. Supp. 2d at 778 (citing *In re Folding Carton*, 609 F.2d at 872). "[T]o the extent any doubt exists regarding the validity of the claimed Fifth Amendment privilege, the benefit of that doubt must go to the witness asserting the privilege." *In re Corrugated Container*, 661 F.2d at 1151. A court's inquiry should focus "on what a truthful answer might disclose, rather than on what information is expected by the questioner." *Zicarelli v. N.J. State Comm'n of Investigation*, 406 U.S. 472, 480 (1972).

The Bank argues that the Court need not accept Freed's claimed privilege at face value. (Mot. ¶ 7). The Bank contends that under the Appointment, Ruderman expressly authorized Freed to sign or approve the signing of the Pledge Agreement. (*Id.* ¶ 9). Thus, the Bank argues that Freed cannot be prosecuted for having signed the Pledge Agreement. (*Id.*). Accordingly, Freed has no reasonable basis for invoking the Fifth Amendment privilege. (*Id.*). The Court is not persuaded.

It is not clear that the Appointment would have authorized Freed to sign the Pledge Agreement. While Ruderman takes no position on the merits of the Bank's

motion (Dkt. 119 at 1), she contends that the Bank "misreads the Appointment," asserting that the Appointment did not grant Freed authority to sign the Pledge Agreement (*id.* at 1–2). Ruderman states that the Appointment granted Freed authority only with regard to Freed family assets and asserts that the Ruderman Trust accounts were *not* Freed family assets. (*Id.* at 2–3). Further, Ruderman argues that even if the Ruderman Trust is considered a Freed family asset, the Appointment limited Freed's authority to *increasing* an investment of the Ruderman Trust in Freed family assets. (*Id.* at 6–7). And Ruderman contends that the Pledge Agreement "did not 'increase the investment' of the Trust in DDL or in any other entity." (*Id.* at 7). Thus, if Freed had no authority under the Appointment to execute the Pledge Agreement on behalf of the Ruderman Trust, he could be accused of defrauding the Bank by falsely representing that he was authorized to do so.

Even assuming that the Appointment authorized Freed to execute the Pledge Agreement, he could still face criminal prosecution. At the time that the Pledge Agreement was executed, Freed had personally guaranteed a substantial part of the approximately $50 million in overdue loans from Bank of America to DDL. Thus, if Freed signed the Pledge Agreement, he had a clear conflict of interest in connection with pledging the Ruderman Trust interests to the Bank. Under those circumstances, Freed would have been in violation of his fiduciary duties and could be accused of defrauding the Ruderman Trust by acting consistent with his own interests and against the interests of the Trust.

In sum, the Court finds that Freed's deposition testimony could expose him to the real danger of prosecution. Therefore, Freed's assertion of the Fifth Amendment privilege was reasonable.[1]

### III. CONCLUSION

For the reasons stated above, Defendant's Motion to Compel [105] is **DENIED**. The discovery stay as to witnesses Laurance Freed, Caroline Walters, and Lori Kitts [110] is vacated.

E N T E R:

Dated: December 20, 2013

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge

---

[1] The Bank "further requests appropriate relief as to the depositions of Caroline Walters and/or Lori Kitts, who also invoked the Fifth Amendment." (Mot. ¶ 11). However, the Bank merely "requests that the discovery deadline be continued as to Caroline Walters and/or Lori Kitts for some reasonable period after the deposition of Laurance Freed has been completed and the Bank obtains a ruling with respect to the refusal of those witnesses to testify." (*Id.*). Given the Court's ruling that Freed properly invoked his Fifth Amendment privilege, the Bank's request as to the Walters and Kitts depositions is denied.